No. 4900.

(Court of Appeal, Parish of Orleans.)

## MRS. MARY SALISBURY vs. JAMES M. CONNER.

O. Villere for plaintiff and appellee.

Buck, Walshe & Buck for defendant and appellant.

GODCHAUX, J.—This case comes to us with the following written opinion of the Judge of the lower court:

"The facts are as follows:

"Mrs. Mary Salisbury sued out executory process on a note signed by James M. Conner, for the sum of $500.00. This note is dated August 13, 1903, and is paraphed by R. J. Maloney, the discredited notary, to identify it with an act of mortgage securing it, which was recorded in the Mortgage Office for this parish, in Book 751, folio 722. Recorded August 17, 1903.

"Mrs. Salisbury acquired the note in question, with others, on the day of its date, from the said Maloney, and has held it ever since, the interest thereon being paid at intervals by Maloney, and the note itself renewed from time to time.

"On the 24th of June, 1904 G. & G. E. Grundman acquired the property against which the executory process was issued by act before R. J. Maloney, the

act of acquisition setting forth that the property bought was free from incumbrance as set forth in copy of Mortgage Certificate filed in this record.

"This mortgage certificate shows, on its face, that the mortgage in Book 751, folio 722 (the mortgage securing Mrs. Salisbury) was canceled June 24, 1904, the date of the purchase by the Grundmans of the property herein seized.

"It appears that this inscription in the Mortgage Office, Book 751, folio 722, was canceled by the Deputy Recorder of Mortgages by virtue of a certificate issued to him on the 22d of June, 1904, by R. J. Maloney, in which certificate R. J. Maloney certifies that Paul W. Maloney, as the last holder of the note, admitted the payment in full of the note, and purports to exhibit the note with the signature thereon duly canceled and requires the inscription to be canceled.

"On this certificate the inscription was canceled and a clean certificate issued and annexed to Act of Conveyance to Grundman.

"In the meanwhile Mrs. Salisbury held the note, and the Grundmans acquired the property apparently free from the mortgage securing it.

"This certificate under which the cancellation of Mrs. Salisbury's inscription was obtained is unquestionably a fraudulent one. Maloney's records disclose no act where the certificate could properly issue, and does not purport to be a duplicate copy of an act of release. (C. C., Art. 3374.)

"No one but the last holder and owner of the note secured by the inscription of the mortgage, had a legal right either to sign an act of release to the Recorder of Mortgages, or to procure the issuance of a certificate such as issued for this cancellation.

"Rights under a mortgage cannot thus be destroyed, and the holder of the note need go no further than to know that the inscription was once made before innocent third parties acquired rights in the property mortgaged. If this recordation is once properly made, no further vigilance on the part of the mortgage note-holder is required.

"This cancellation was effected under the forms of law, and by acts for which Mrs. Salisbury was in no wise responsible, and by which her rights could in no wise be jeopardized.

"The inscription protects her note with as much certainty as if the fraudulent cancellation had not been effected. Third parties, however innocent, can acquire no rights as against another innocent party whose mortgage has been illegally or fraudulently canceled.

"But the mover in rule further claims that the note held by her is forged, and that the mortgage, being an accessory obligation, falls with the principal obligation. This is generally true, but the burden of proof is upon the party who alleges the forgery.

"The proof in this case involves the veracity of R. J. Maloney and Mr. Conner, the ostensible maker of the note herein. Maloney, who issued the fraudulent certificate requiring the cancellation of Mrs. Salisbury's inscription, swears positively that the signature is that of Conner, and further states, as one of his reasons for so swearing, that Conner was in the habit of signing anything—acts, releases, etc., in blank, so that Maloney could use them at will. Conner swears that the signature of his name is forged, and gives as a reason for so swearing, that he never signed his name as it appears on the note, and gener-

ally that the writing is a better penmanship than his.

"This reason of Conner is contradicted by showing that the original act of sale and mortgage securing the note, was admittedly signed by Conner; and by production of many signatures, admittedly genuine, wherein the penmanship and spelling of the name is so similar to that in the note, that his opinion is entitled to but little weight.

"It appears also that Conner had no interest whatsoever in the property in question; that it belonged to Maloney and was in the name of Conner for convenience only. Conner tells us that he paid no attention to such affairs; that he had the utmost confidence in anything done by Maloney.

"Maloney's evidence is unworthy of belief, and Conner, by his negligence in matters of importance and his complete subservience to Maloney's designs, makes it impossible, with the contradictions shown by the various checks and signatures on file herein, to determine with certainty that the signature in question is forged.

"Both the plaintiff in rule and the defendant, Mrs. Salisbury, are unquestionably in good faith, and any judgment inflicting a loss on either party to this proceeding is necessarily unsatisfactory in the highest degree.

"The rule of law, however, is that any one alleging a fact must prove it with reasonable certainty, otherwise his proceeding will be dismissed.

"The plaintiff in rule has not proven the cancellation to have been legally made so as to affect Mrs. Salisbury's right under her mortgage; nor has he shown with certainty the note to be a forgery.

"Hence, the rule to enjoin executory process is dismissed."

Appellants take exception to the action of the lower Court in holding that the burden of proving the forgery rests on them, and they maintain that having proved, by the production of the certified copy of the act of release, that the note and mortgage referred to in the act of sale and mortgage from Harry Maloney to James M. Conner had been canceled and erased from the records, it then devolved upon plaintiff to show that the note she held was a genuine one. Having shown, as against this, that there was in fact no real act of release and that the purported copy was beyond doubt manufactured out of the whole cloth; that the note she held and produced had been in her possession since its date; that this note, identified with the notary's **paraph** and apparently corresponding in all its details with the note described in the act of mortgage with which it is identified, bears no mark of payment nor cancellation; having fortified these facts with proof sufficient to render it practically certain that no other note of like tenor or effect is or ever has been in existence—the plaintiff not only has successfully rebutted appellant's proof of the payment and cancellation of the note, but has likewise established the genuineness of the note she holds with sufficient certainty to shift upon appellants the burden of showing it is forged.

In this, as well as in all other respects, the opinion of the lower Court properly announces and applies the legal principles appropriate to the case, and our attentive examination of the record satisfies us moreover with the correctness of its conclusion upon the facts.

Affirmed.

St. Paul, J., recused.

March 21, 1910.

Rehearing refused May 2, 1910.

Writ refused by Supreme Court June 7, 1910.